SSM ASSOCIATES LIMITED PARTNERSHIP ET AL. *v.*
PLAN AND ZONING COMMISSION OF THE
TOWN OF FAIRFIELD ET AL.
(6032)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued April 5—decision released August 16, 1988

*Roy H. Ervin,* town attorney, with whom was *Roy H. Ervin, Jr.,* for the appellants (defendants).

*James R. Fogarty,* for the appellees (plaintiffs).

BORDEN, J. The defendants[1] appeal from the judgment of the trial court issuing a writ of mandamus requiring them to issue a certificate of zoning compliance to the plaintiffs[2] for construction of an office building. The dispositive issue involves the meaning of the term "site plan" as used in General Statutes § 8-3 (g).[3] We find no error.

The parties stipulated to the following facts. The named plaintiff had an agreement to purchase from the other plaintiff the property in question, consisting of approximately 4.25 acres located in a designated research district (DRD) established pursuant to the Fairfield zoning regulations. On March 11, 1986, the plaintiffs filed with the named defendant (commission) a complete application for approval of the construction of an office building on the property. The proposed building is a permitted use in a DRD, and requires a

---

[1] The defendants are the town of Fairfield plan and zoning commission, the zoning enforcement officer, and the planning and zoning director.

[2] The named plaintiff is the contract purchaser of the real property in question from the other plaintiff, Herbert H. Moorin, trustee.

[3] General Statutes § 8-3 (g) provides: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. A decision to deny or modify a site plan shall set forth the reasons for such denial or modification. A copy of any decision shall be sent by certified mail to the person who submitted such plan within fifteen days after such decision is rendered. The zoning commission may, as a condition of approval of any modified site plan, require a bond in an amount and with surety and conditions satisfactory to it, securing that any modifications of such site plan are made. The commission shall publish notice of the approval or denial of site plans in a newspaper having a general circulation in the municipality."

special permit from the commission. The application included submission of a site plan which is inseparable from the requirement of a special permit. Zoning regulations require that the plaintiffs' application be referred to the commission for approval. The plaintiffs' application was supported by plans, maps, and drawings of the site improvements, site topography, architecture, floor designs, planting and lighting, elevations and other data showing the proposed five-story office building encompassing 92,565 square feet of office space, with a "footprint" of 18,975 square feet, to be constructed on approximately 10 percent of the land area of the property, together with surface and garage parking for 316 vehicles.

The parties further stipulated that the commission's first regular meeting following receipt of the application was on March 25, 1986. Although a hearing was not required, on April 22, 1986, the commission scheduled a public hearing on the application to be held on June 10, 1986. At an executive session on June 17, 1986, the commission denied the application. The commission's decision was published on June 21, 1986.

The parties further stipulated that, by letter of June 19, 1986, the plaintiffs requested a certificate of zoning compliance from the defendant zoning enforcement officer, based on the fact that no action had been taken by the commission within sixty-five days of March 25, 1986. The defendants did not respond to this request, and have not issued the requested certificate. The plaintiffs did not consent to any extensions of time limitations pursuant to General Statutes § 8-7d. The decision of the commission was rendered eighty-four days after March 25, 1986, the date of the commission's first regular meeting after receipt of the plaintiffs' application. The trial court held that the case was controlled by our decision in *Carr* v. *Woolwich*, 7 Conn. App. 684, 510

A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), and rendered judgment issuing the writ of mandamus. This appeal followed.

The defendants raise several related claims of error, all of which concern whether *Carr* v. *Woolwich,* supra, controls this case. Although *Carr* is factually distinguishable from this case, our determination of an issue which *Carr* left unresolved leads to the conclusion that the trial court did not err.

In *Carr,* we noted "that there is an inconsistency in the use of the term, 'site plan,' between the first and third sentences of [General Statutes § 8-3 (g)]. The first sentence connotes that the site plan is but a part of the application approval process, namely, as an aid in determining whether a proposed use conforms to the regulations. The third sentence contemplates automatic approval of a site plan by the passage of time, as if approval of the site plan carries with it approval of the entire application with respect to which, under the first sentence, the site plan is simply an aid to determine the conformity of the proposed use with the regulations." Id., 699–700.

In *Carr,* however, we found it unnecessary to resolve the inconsistency "because in [*Carr*] we view[ed] the plaintiff's site development plan as inseparable from, and part and parcel of, its accompanying documents. The regulation pursuant to which the site development plan was filed required that the plan 'show all applicable data required.' The application, the site plan itself and the accompanying two page document, taken together, purported to show all such data required by the regulations. Thus, for purposes of General Statutes § 8-3 (g), the plaintiff's site plan included his application and two page document." Id., 700.

In *Carr,* therefore, a coalescence of factors made it unnecessary to resolve the statutory inconsistency in

§ 8-3 (g). First, the regulations required that the site plan itself show all applicable data required by the regulations. Furthermore, the applicant's site plan was "a detailed site development plan"; id., 685; accompanied by a two page document which supplemented it by containing necessary information not shown on the site plan document. It also was accompanied by an application for a zoning permit. Id. All three documents, of which the site development plan was dominant and was required to show all applicable required data, purported to show all the data required by the regulations. Id., 700. Under those circumstances, we concluded that "for purposes of General Statutes § 8-3 (g), the plaintiff's site plan included his application and two page document"; id.; and that automatic approval of the site plan was presumed to include approval of the accompanying documents. Id.

In this case, however, the regulations do not require that the site plan itself "show all applicable data required," as provided by the Bridgewater regulation. Id. Section 25.2 of the Fairfield zoning regulations requires that an application for a special permit be accompanied by a "written statement describing the proposed use"; § 25.2.1; "a site plan as defined in section 31.0";[4] § 25.2.2; "[a]rchitectural plans as defined in section 31.0"; § 25.2.3; and "such additional infor-

[4] Neither the trial court record nor the appellate record contains a copy of § 31.0, defining the required contents of a site plan. Section 25.5.2 of the regulations, however, requires that an application for a special permit be approved only if it conforms to the following additional requirement, inter alia: "The site plan, including the location and arrangement of buildings, other structures, signs and outdoor illumination and the contours, streets, driveways, off-street parking and loading spaces, sidewalks, storm drainage, sewage disposal facilities and landscaping, shall be of such a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values in the neighborhood, to preserve and enhance the appearance and beauty of the community and to avoid undue traffic congestion."

mation that the commission may deem necessary to make a reasonable decision on the application." § 25.2.4.

The "site plan" required by the Fairfield regulations, therefore, does not carry with it the same degree of dominance in the application process as it did in the Bridgewater regulations at issue in *Carr*. Under these circumstances, therefore, we deem it necessary to resolve the inconsistency in § 8-3 (g) which we noted in *Carr*.

We resolve that inconsistency by concluding that the term "site plan," as used in § 8-3 (g), is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that use. As such, it includes the entire package of documents submitted to a zoning "commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such [zoning] regulations." General Statutes § 8-3 (g). Several considerations lead us to this conclusion.

First, the term "site plan" is not defined by the statute, and this record does not disclose to us the extent to which the town of Fairfield has defined it in its zoning regulations. Although the term has been used in our zoning cases where approval of a site plan was involved in the litigation, those cases did not define it. See, e.g., *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 376 A.2d 385 (1977); *East Side Civic Assn.* v. *Planning & Zoning Commission*, 161 Conn. 558, 290 A.2d 348 (1971). Nor can we say that the term has acquired such a fixed meaning in zoning parlance that it must be read in § 8-3 (g) as a term of art. The zoning treatises define it broadly, in a fashion not inconsistent with our reading of its use in General Statutes § 8-3 (g). "A

'site plan' is a physical plan showing the layout and design of the site of a proposed use, prepared by the builder or developer. It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses. Specifically, items such as grade elevation levels, drainage plans, means of access, landscaping, screening, architectural features, building dimensions *and other elements relevant to the community welfare* are properly included in a site plan. . . ." (Emphasis added.) 8 P. Rohan, Zoning and Land Use Controls, § 53.06 n.1. "A site plan is a plan required to be submitted by the builder, showing the proposed location of the buildings, parking areas, and other installations on the plot, and their relation to existing conditions, such as roads, neighboring land uses, natural features, public facilities, ingress and egress roads, interior roads, and similar features." 2 A. & D. Rathkopf, The Law of Zoning and Planning § 30.04 [1].

It is axiomatic that statutes are to be read so as to make sense and to avoid bizarre results. *State v. Scott,* 11 Conn. App. 102, 119, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1154 (1987). Under § 8-3 (g), approval, disapproval or modification of a site plan triggers certain consequences. Approval of a site plan by lapse of time entitles "the applicant" to a certificate of approval. If the zoning agency denies or modifies "a site plan," it must "set forth the reasons" for its action. General Statutes § 8-3 (g). It must also timely send by certified mail a copy of its decision to "the person who submitted such plan," publish notice of approval or denial of site plans in a newspaper, and it may require a bond as a condition of approval of any modified site plan. Id.

Unless the term "site plan" is read to mean, not only the particular document showing the location of the building and certain other improvements on the prop-

erty, but the entire application package, these consequences of action on a "site plan" would make little sense and would lead to bizarre results. In the case of approval by lapse of time, for example, it would make little sense and be a strange result to require a certificate of approval for a site plan which is somehow disembodied from the application of which it is an integral part. Similarly, the other requirements which follow approval, denial or modification of a site plan must, in order to make sense of them, be read to refer to the application process of which the site plan is an integral part.

Finally, it is apparent that the municipalities in this state are free to draft their zoning regulations so as to define the meaning and function of "site plans" in different ways. Under such circumstances, the meaning of § 8-3 (g) could vary from town to town. The virtue of our reading of the term as used in § 8-3 (g) is that of uniformity; the meaning of the statute will remain the same as it is applied from town to town.

Applying this broad, functional definition of the term "site plan" to the facts of this case, we conclude that the trial court did not err in deciding that the plaintiffs' application for a special permit was approved by lapse of time. The parties stipulated that the application included a site plan which is inseparable from the requirement of a special permit. The application package purported to include all the information required by the regulations for the commission's decision on the application. The commission did not act on the application package within the mandated time limit. Accordingly, the plaintiffs' application was approved by lapse of time pursuant to General Statutes § 8-3 (g).

There is no error.

In this opinion the other judges concurred.