[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, RR Pool Home, Inc. (RR), and Niel Farans, Alvin G. Farans and Diane Green (partnership), appeal, pursuant to General Statutes § 8-8, from a decision of the defendant, the Planning and Zoning Commission of the Town of Ridgefield (Commission), that denied RR's application for a revised special permit for RR's pool and furniture store. CT Page 13550
The plaintiffs commenced this appeal by service of process on March 24, 1994. The plaintiffs allege that the Commission's action in denying RR's revised special permit application was arbitrary, illegal and an abuse of discretion; violates their constitutional rights to procedural and substantive due process; and that §§ 412.0 and 312.02E of the Ridgefield Zoning Regulations are void for vagueness, lack standards and are otherwise unconstitutional. [Plaintiffs' Amended Complaint ¶ 20].
The partnership owned the property that is the subject of this appeal, located at 975 Ethan Allen Highway in the town of Ridgefield, from the time of the Commission's decision in this matter on February 14, 1994, until September 2, 1994, when RR purchased the property for $315,000 from the partnership. RRPool Home, Inc. v. Zoning Board of Appeals, Superior Court, judicial district of Danbury, Doc. No. 31 61 52 (May 26, 1995, Riefberg, J.). As of September 2, 1994, and at the time of the hearing on this matter, the partnership's interest in the property was reduced to a $1500 purchase money mortgage on the property. Id.
RR maintained a lease on the property from September 1, 1993 until May 31, 1994. Id. The lease was never renewed. Id. On April 15, 1994, however, RR and the partnership entered into an "agreement" whereby RR would purchase the property from the partnership for $315,000, the closing to take place on or before 10:00 a.m. on September 1, 1994, with time being of the essence. Id. The closing actually occurred on September 2, 1994. Id. Presently RR is the owner of the property. Id.
During January, 1994, RR filed an application for a building permit requesting permission to alter the window structure at its pool and patio store. [Supplemental Return of Record [SROR]: building permit application]. The application was thereafter referred to the Architectural Advisory Committee [AAC]. On January 19, 1994, the AAC convened to discuss the application. [Return of Record [ROR], Item 1(d): meeting minutes]. The AAC "questioned why so much glass in the `storage area' — Block A [the storage area] should not have the amount of glass, if truly to be used as storage — the bldg. appears to be used entirely for retail (Display). AAC questioned how the bldg. was going to be used." [ROR, Item 1(d)]. The AAC rendered the following suggestions: "1. Reduce the amount of window display in storage area; 2. Eliminate the curved head windows in the CT Page 13551 gables; 3. No objection to light fixture type that was submitted; 4. Also why all the spot lights shown on the building — 8 locations ? seems to indicate outdoor display — if for parking they should be pole type with an indirect light source — a site plan should be submitted to PZ" [ROR, Item 1(d)]. The Record does not reflect whether the application was ever approved or formally denied. There was no appeal taken from the disposition of the building permit.
On January 19, 1994, RR, through its president David Ross, requested a revision to its special permit in force at the store. [ROR, Item 2(a): application letter]. The reason for the revision was to "change the windows. The existing windows will be extended to ground level." [ROR, Item 2(a)]. Accompanying the letter were several drawings and maps detailing the proposed work. [ROR, Items 2(b)-(d): drawings and maps]. The maps indicate that a 9x13 glass door would be added on the west side of the building; two 8x16 glass windows would be added on the west side; two 5x8 glass windows would be added on both sides of the glass door; a 8x16 and a 8x8.5 glass window would be added on the east side; and, a 8.5x22.5 glass window and two glass doors would be added on the north side and all windows would be extended to ground level. [ROR, Item 2a].
On February 27, 1995, the members of the Commission conducted a drive by viewing of the RR property. [ROR, Item 5: minutes]. On March 1, 1994, the Commission convened a public meeting to discuss RR's application. [ROR, Item 8: minutes]. "In response to Mr. McChesney's query re: permitted uses, Mr. Inglese responded that the permitted uses were for office use and wholesale selling; a ZBA variance granted the retail sale of fine furniture and rugs; a second variance to sell additional items was denied." [ROR, Item 8, p. 1].
Thereafter, "[a] motion was made by Mr. Katz, seconded by Mr. Huntoon, to deny the application for the following reasons: 1. The proposal is a complete revision of the building; 2. The application was inaccurately presented; 3. On the east side, the door shown on the drawing is not a sliding door, it is an overhead door. He questioned the need for this in light of the permitted uses; 4. On the north side there was a change from wood to glass; 5. There is no relation between the drawing and what was presented in the special permit form; 6. The proposed revision is intrusive to the area; 7. The building is being redesigned for display purposes and the applicant should come in CT Page 13552 with a full permit application and not a revision to a special permit application." [ROR, Item 8, p. 1]. Then Mr. Inglese read into the record the report of the AAC. [ROR, Item 8, p. 2]. "Mr. Katz requested that the points raised in the AAC's report be included by reference in the reasons for the Commission's denial. Mr. Huntoon said the applications seemed to be bootstrapping themselves to expand retail use. Dr. Autuori said the changes will make the building more visible and distract the motorists on Route 7. He felt maintaining the traffic flow is important. Dr. Gelfman explained that, historically, the site was originally a gas station and the change to its present use was made with the intent to reduce visual impact and make a more pleasing entrance to Town. This revision to the special permit seems to reverse that. Mr. Katz said it is simply not in the best interest of Ridgefield. The motion passed (9-0)." [ROR, Item 8, p. 2].
On March 10, 1994, the denial was published in TheRidgefield Press. [ROR, Item 9: certificate of publication]. On March 11, 1995, the Commission sent a copy of the legal notice, postage prepaid, return receipt requested to Mr. Ross at the Ridgefield address. [ROR, Item 11: photocopy of envelope]. The letter, however, was unclaimed. [ROR, Item 11]. Despite the failure to claim the letter, however, RR filed the appeal in a timely fashion on March 24, 1994.
On July 6, 1994, RR filed a brief exhaustively detailing its various positions. RR's arguments are basically that the Commission's decision is null and void under General Statutes §§8-3c(b) and 8-26e since RR did not receive the decision within 15 days of publication, that the prior variance made the special permit in place moot, that there was no intensification of the use of the property requiring a revised special permit, there was no public hearing as required by General Statutes § 8-2, Ridgefield Code §§ 412.0 and 324.02E are unconstitutional and void for vagueness and the regulation of windows and doors is not a valid exercise of police power.
On August 5, 1994, the Commission filed its brief. Therein it counters the arguments asserted by RR. With respect to the fifteen day notice issue, the Commission argues that General Statutes §§ 8-3c(b) and 8-26e only require mailing and publishing within fifteen days and not receipt by the applicant as urged by RR. The Commission also argues that RR cannot claim that Ridgefield Code §§ 412.0 and 312.02E are unconstitutional after RR submitted an application thereunder. The Commission counters CT Page 13553 RR's mootness claim by arguing that RR failed to cite any authority in support of its position. The Commission also argues that a public hearing is not required where a revised special permit is requested. Lastly, the Commission argues that RR has failed to prove that the Commission intentionally discriminated against RR or prejudged the case.
On August 21, 1995, the matter was tried to this court.
JURISDICTION
The plaintiffs allege that they are aggrieved by the decision of the Commission in this matter. RR is the owner of the property at the present time and was the applicant before the Commission. "As the owner of the property that was the subject of the special permit application, the plaintiff is aggrieved by the denial of its application. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953
(1991); Bossert Corporation v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968)." New Testament Baptist Church v. Planning andZoning Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Doc. No. 52 72 47 (March 21, 1995, Holzberg, J.). As a result, the court finds that RR is aggrieved by the Commission's decision.[1]
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). Where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal and must dismiss the case. UpjohnCo. v. Zoning Board of Appeals, 224 Conn. 96, 102, 616 A.2d 793
(1992). Further, compliance with statutory notice provisions is a prerequisite to a valid administrative action and the failure to publish notice as required by statute is a jurisdictional defect rendering the Commission's decision void. Wright v.Zoning Board of Appeals, 174 Conn. 488, 491, 391 A.2d 146 (1978).
RR's appeal from the Commission to this court is controlled by General Statutes § 8-8. Section 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process . . . within fifteen days from the date that CT Page 13554 notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."
RR commenced this appeal by service of process on March 24, 1994, fourteen days after the Commission's decision was published in The Ridgefield Press on March 10, 1994. Therefore, the court finds that RR's filing of the appeal was timely under General Statutes § 8-8(b).
STANDARD OF REVIEW
"The issue in this case is whether the Commission acted properly in denying the revised special permit. `When acting upon a special permit [application], a zoning commission acts in an administrative capacity.' Sheridan v. Planning Board, 159 Conn. 1,16, 266 A.2d 396 (1970). The commission's function is to determine whether 1) the proposed use of the property is expressly permitted under the zoning regulations; 2) the standards in the relevant zoning regulations are satisfied; and (3) conditions necessary to protect public health, safety, convenience and property values, as required by General Statutes § 8-2, can be established. Housatonic Terminal Corp. v. Planning Zoning Board of the City of Milford, 168 Conn. 304, 307,362 A.2d 1375 (1975)." New Testament Baptist Church v. Planning andZoning Commission, supra. In so doing the Commission is granted discretion to determine whether "the general standards in the regulations have been met. . . ." Connecticut HealthFacilities Inc. v. Zoning Board of Appeals, 29 Conn. App. 1, 6,613 A.2d 1359 (1992).
If a special permit application conforms with the standards in the statutes and the agency's existing regulations, it must approved. A.P. W. Holding Corporation v. Planning ZoningBoard, 167 Conn. 182, 185, 355 A.2d 91 (1974); Daughters of St.Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 56,549 A.2d 1076 (1988).
In acting on the application, the Commission "must give reasons for its decision. General Statutes § 8-3c. Facts supporting the agency's decision may include knowledge acquired by commission members through personal observation of the site, or through personal knowledge of the area involved in the application. Oakwood Development Corporation v. Zoning Board ofCT Page 13555Appeals, 20 Conn. App. 458, 460, 567 A.2d 1260, cert. denied,215 Conn. 808, 576 A.2d 538 (1990). . . . If the Commission does not make a formal statement, then any reasons stated by the Commissioners on the record may be considered the basis for the formal decision. Beit Havurah v. Zoning Board of Appeals of theTown of Norfolk, 177 Conn. 440, 445, 418 A.2d 82 (1979)." NewTestament Baptist Church v. Planning and Zoning Commission,
supra. The Commission's action must be sustained if even one of the stated reasons is sufficient to support it. Daughters of St.Paul, Inc. v. Zoning Board of Appeals, supra, 17 Conn. App. 56-57.
"When reviewing a special permit decision, the Court determines whether the reasons given are reasonably supported by the record and pertinent to the zoning regulations. HousatonicTerminal Corp. v. Zoning Board, supra, 168 Conn. 305-06; DeMariav. Planning Zoning Commission, supra, 159 Conn. 541. `The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised.' Oakwood Development Corporationv. Zoning Board of Appeals, supra, 20 Conn. App. 460." NewTestament Baptist Church v. Planning and Zoning Commission,
supra. In applying the law to the facts of a case, the Commission is endowed with a liberal discretion, and the court will not disturb the Commission's decision unless it was unreasonable, arbitrary or illegal. Daughters of St. Paul, Inc.v. Zoning Board of Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076
(1988). The burden of proof is on the appellant to show that the zoning authority acted improperly. Pleasant View FarmsDevelopment, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 269-70,588 A.2d 1372 (1991).
With these bedrock principles as a backdrop, the court will examine the claims proffered by RR.
MERITS OF THE APPEAL
RR articulates several arguments that the court will address seriatim, none of which have any merit.
I. Notice under General Statutes §§ 8-3c and 8-26e
RR claims, without the aid of any citation, that the Commission's decision should be nullified since RR did not actually receive the Commission's decision within fifteen days CT Page 13556 after its rendition.
General Statutes §§ 8-3c(b) and 8-26e require the Commission to 1. publish the decision in a newspaper and 2. mail a copy of the decision by certified mail to the applicant. There is no requirement in the statutes that the decision be received by the applicant within the fifteen days. Furthermore, RR has not supplied the court with a citation to any authority so holding. Despite the purported lack of notice, RR was still able to commence this appeal in a timely fashion. Even if the statute required receipt within fifteen days, any error on the commission's part would have been harmless since the appeal was timely commenced.
As a result, the court overrules RR's first argument.
II. Mootness of special permit
RR argues in one paragraph of its brief that since a variance was granted in 1990, the prior special permit that was issued is moot. There is no citation to any authority supporting this proposition nor any explanation of how the variance serves to moot the prior special permit. "Where an issue is raised by a party and the party fails `to offer any reasoned explanation' or legal analysis, the `issue is not sufficiently briefed to warrant [the court's] consideration.' Milford Bank v. Kerschner Research Development, Superior Court, judicial district of Fairfield at Bridgeport, Docket. No. 277089 (January 6, 1994, Ballen, J.), citing Gaynor v. Union Trust Co., 216 Conn. 458, 482,582 A.2d 190 (1990)." Hajjar v. Fredrick L. Bultman, Inc., Superior Court, judicial district of Danbury, Doc. No. 31 62 44, note 4 (February 9, 1995, Leheny, J.). Therefore, due to the inadequate briefing, the court need not address the mootness issue.
III. Whether the Commission's decision to deny the applicationwas unreasonable, arbitrary and capricious
Initially,[2] RR posits that since there was no "substantial intensification or significant change proposed" for the property a revision to the special permit was not necessary, and, in the alternative, if it was, the Commission's decision thereon was unreasonable, arbitrary and capricious.
"A special permit is a use which the zoning regulations expressly permit under conditions specified in the regulations." CT Page 13557 R. Fuller, Land Use Law and Practice § 3.7, p. 29 (1993), citingW A T R, Inc. v. Zoning Board of Appeals, 158 Conn. 196, 200,257 A.2d 818 (1969). "[I]f [the particular] use is not permitted or is prohibited, but is desirable for a particular property, it cannot be obtained except with a variance from the zoning board of appeals." Id. "A specially permitted use enjoys a unique status in a town's planning and zoning scheme because it generally is not restricted to a particular zoning district. `The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site.'" Barberino Realty Development v. Planning ZoningCommission, 222 Conn. 607, 612-13, 610 A.2d 1205 (1992), quoting T. Tondro, Connecticut Land Use Regulation p. 78 (1992).
"Accordingly, before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. The commission, therefore, must be allowed to examine the suggested proposal closely. The details of the proposal are laid out in the site plan, which `is a physical plan showing the layout and the design of the site of a proposed use. . . . It generally should indicate the proposed location of all structures, parking areas and open spaces on the plot and their relation to adjacent roadways and uses.' (Internal quotation marks omitted.) SSM Associates Limited Partnership v. Planning Zoning Commission, 15 Conn. App. 561, 567, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989)." Barberino Realty Development v. Planning Zoning Commission, supra, 222 Conn. 613.
"When considering an application for a special permit, the commission is called upon to make a decision as to whether [the]particular application for [RR's renovations] would be compatible with the particular zoning district, under the circumstances then existing." (Emphasis in original.) BarberinoRealty Development v. Planning Zoning Commission, supra,222 Conn. 614. "A special permit is considered generally compatible with the zoning district, but requires review and approval by a land use agency under standards in the zoning regulations to determine that it is consistent with uses permitted as of right CT Page 13558 in the district." R. Fuller, supra, § 3.7, p. 29, citingBarberino Realty Development v. Planning Zoning Commission,
supra, 222 Conn. 612.
The Ridgefield Zoning Regulations mandate that any commercial building consisting of more than 1,000 square feet requires a special permit. Ridgefield Code § 312.01; Plaintiffs' Complaint, para. 4; Defendant's Answer, para. 4. In 1979, the Commission granted a special permit allowing for the construction of an office building on the site. Plaintiffs' Complaint, para. 5; Defendant's Answer, para. 5. On January 19, 1994, RR requested "a revision to the special permit for 975 Ethan Allen Highway to change the windows." [ROR, Item 2(a)].
Based on the fact that the prior special permit allowed an office building to be constructed on the property and RR Pools, apparently, was attempting to construct windows for display purposes, as found by the Commission, the Commission could reasonably have found that RR was attempting a "modification" of the use of the building under Ridgefield Code § 312.02E, thereby requiring a revision of the special permit. See Barberino Realty Development Corp. v. Planning Zoning Commission, supra,222 Conn. 607 n. 7 ("the determination of what constitutes a `minor alteration' [requiring revised special permit approval] is best left to the commission."). Furthermore, RR itself styled its application as a "revision" to the existing permit. Since the Commissioners can use their special personal knowledge in aid of their decision; Oakwood Development Corporation v. Zoning Boardof Appeals, supra, 20 Conn. App. 460; they were within their discretion in acceding to RR's request that the application be treated as a revision to the existing special permit.
In connection with their evaluation of the revision application, the Commission must give consideration to the factors set forth in Ridgefield Code § 312.02C, as follows:
 (1) The location, size and intensity of the proposed use or uses; and the size and location of the site shall be in harmony with the appropriate and orderly development of the district in which it is located.
 (2) The location, nature and size of buildings and the architectural design of same shall be compatible with neighboring properties and their uses, and CT Page 13559 shall not hinder or discourage the appropriate development or use of land and buildings, nor impair the value thereof.
 (3) Streets and other rights-of-way shall be of such size, condition and capacity to adequately accommodate the traffic to be generated by the particular proposed uses(s) [sic].
 (4) The proposed use(s) shall not impair the public health, safety or welfare.
 (5) Where it is proposed to convert a structure designed and built originally for other uses, the applicant shall show the adaptability of such structure to the proposed use, particularly in relation to the public health and safety.
 (6) Where a proposed use abuts or is in a residential zone, the Commission may regulate hours of operation taking into consideration intensity of lighting, noise and traffic generation.
 (7) Where a proposed use and/or building is to be located within an Aquifer Protection District the Commission may impose additional measures, safeguards and conditions necessary to mitigate adverse impacts on the underlying aquifer.
In applying the foregoing regulations the Commission is granted a liberal discretion. Connecticut Health Facilities,Inc. v. Zoning Board of Appeals, supra, 29 Conn. App. 6. After the meeting to discuss this matter, the Commission concluded that the proposal was a complete revision of the building, that the application was inaccurately presented, that the application did not appear to correspond to the permitted uses at the site, that the proposed revision was intrusive to the area, that the building was being redesigned for display purposes and the applicant should have applied for a full permit application rather than a revision to a special permit which provided for office space only. [ROR, Item 8, p. 1]. The AAC joined in these concerns and a few others that were included in the Commissions reasons for denial. [ROR, Item 8, p. 2].
"Mr. Huntoon said the applications seemed to be CT Page 13560 bootstrapping themselves to expand retail use. Dr. Autuori said the changes will make the building more visible and distract the motorists on Route 7. He felt maintaining the traffic flow is important. Dr. Gelfman explained that, historically, the site was originally a gas station and the change to its present use was made with the intent to reduce visual impact and make a more pleasing entrance to Town. This revision to the special permit seems to reverse that. Mr. Katz said it is simply not in the best interest of Ridgefield." [ROR, Item 8, p. 2].
The foregoing reasons comport with the requirements of § 312.02C. Moreover, RR has an affirmative burden under subsection (5) to identify the adaptability of the office building to the proposed retail use as found by the Commission. The Commission found that RR had not carried its burden in this respect. This court cannot substitute its judgment for the Commission's factual decision in this area. Oakwood DevelopmentCorporation v. Zoning Board of Appeals, supra, 20 Conn. App. 460. Based on the findings of the Commission, when considered in light of the regulations, the court finds that the Commission did not act unreasonably, arbitrarily or in an abuse of its discretion in denying the requested revision to the special permit because full retail use is not allowed on the property.[3] See Daughters ofSt. Paul Inc. v. Zoning Board of Appeals, supra, 17 Conn. App. 56
(if application does not comport to the regulations it must be denied); see also R. Fuller, supra, § 3.8, p. 29 (where use is not permitted in the regulations a variance is required).
IV. Constitutional arguments
RR also proffers several constitutional arguments in support of its position that this appeal should be sustained, all of which are without merit. It argues that the Commission violated their due process rights by not conducting a hearing on its application for a revised special permit pursuant to Ridgefield Code § 312.02E. Further, RR argues that §§ 412.0 and 312.02E are unconstitutional on their faces and as applied to RR. Lastly, RR argues that the Commission intentionally discriminated against it or predetermined their case. These propositions will be addressed in turn.
A. Necessity of a public hearing
RR argues that its application for a revised special permit required a public hearing. Under General Statutes § 8-3c(b), CT Page 13561 "the zoning commission . . . shall hold a public hearing on an application or request for a special permit. . . ." RR, without citing to any authority, surmises that the hearing requirements apply to revisions or modifications of existing special permits. This position, however, is contrary to the law. See Conntech Development Company v. Planning Zoning Commission,
Superior Court, judicial district of Tolland at Rockville, Docket No. 05 35 65 (May 12, 1995, Bishop, J.) ("Nothing in [General Statutes § 8-3c(b)] requires a hearing in cases requestingmodification to a special permit.") (Emphasis in original.); VanStone's Cypress v. Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 29 20 15 (January 8, 1993, Levin, J.) (holding that there is no public hearing requirement for modifications under § 8-3c(b)).
Moreover, pursuant to Ridgefield Code § 312.02E, the Commission is vested with discretion in deciding whether to allow a modification applicant to be afforded a public hearing. In this case the Commission chose not to do so. This discretion is appropriately granted under § 8-3c(b) since the Commission, in the first instance, is not required to hold a hearing on an application for modification or revision of a special permit.
Therefore, the court adheres to the foregoing precedent and overrule RR's constitutional challenge on this ground.
B. Constitutionality of Ridgefield Code §§ 412.0 312.02E
RR argues that Ridgefield Code §§ 412.0 and 312.02E are unconstitutionally vague and overbroad on their faces and as applied to it since the regulations afford the Commission unfettered discretion in determining whether there exists the predicate change or modification requiring an amended or revised special permit.
The court does not address this argument as it has been presented to the court in an improper fashion. "[I]n Cioffolettiv. Planning Zoning Commission, 209 Conn. 544, 561-63,552 A.2d 796 (1989), we held that the trial court should have dismissed the plaintiffs' constitutional vagueness attack on the adequacy of the town of Ridgefield's wetlands regulations made in the context of an appeal from the denial of a wetlands application. We stated that `[t]he final constitutional issue, relating to the adequacy of the regulations in setting forth standards for a decision upon an application, constitutes the kind of general CT Page 13562 attack upon land use regulations that we have indicated should be the subject of a declaratory judgment action rather than an appeal from the denial of an application submitted pursuant to those regulations.' Id., 563. The rationale for this procedural requirement is that "[t]he validity of the regulations is a question in which many property owners, in addition to the plaintiffs, may have an interest, and an opportunity for such persons to intervene should be afforded before any such determination should be made.' Id." Bombero v. Planning Zoning Commission, 218 Conn. 737, 742, 591 A.2d 396 (1991).
Therefore, as set forth above, the court does not address RR's vagueness challenge to Ridgefield Code §§ 412.0 and 312.02E.
C. Prejudgment
Lastly, RR proffers an argument of prejudgment or bias. The standards in this area of the law are clear. The plaintiff is entitled to have an "application heard and determined by an impartial and unbiased agency." Huck v. Inland Wetlands andWatercourses Agency, 203 Conn. 535, 536, 525 A.2d 940 (1987). A charge of bias, however, "must be supported by some evidence proving probability of bias before [the Commission] can be faulted" and there is a presumption of the Board's impartiality which the plaintiff has the burden to overcome. Huck v. InlandWetlands and Watercourses Agency, supra, 203 Conn. 537. The denial of an application alone is insufficient to establish prejudgment. See Huck v. Inlands Wetlands and WatercoursesAgency, supra, 203 Conn. 537. "A claim of bias is difficult to prove short of a clear conflict of interest." R. Fuller, supra, § 20.14, p. 369. There was no evidence adduced indicating that such a bias or conflict of interest existed in this case.
Accordingly, the court overrules RR's due process attack or the Commission's actions.
CONCLUSION
Based on the foregoing, the court finds that the Commission's decision was not unreasonable, arbitrary or illegal or in any fashion unconstitutional.
Accordingly, the appeal is dismissed. CT Page 13563
Morton I. Riefberg Judge of the Superior Court