[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal brought by Plaintiffs pursuant to Connecticut General Statutes ("C.G.S.") § 8-8 from a decision of the Defendant Zoning Board of Appeals of the Town of Stonington (hereinafter referred to either as the "Board" or "ZBA") denying their appeal of (i) the zoning enforcement officer's issuance of a building permit to Defendants Gary and Melanie Garrappa (collectively, the "Garrappas") for the construction of an addition to their home, and (ii) the zoning officer's rescission of a cease and desist order which he had previously issued to temporarily halt construction of said addition.
FACTS
On May 3, 1995, an application was made on behalf of the Garrappas to construct an addition to their home located at 48 Pawcatuck Avenue in Stonington, Connecticut. Return of Record ("ROR"), Exhibit 1.[1] Following his review of the information submitted and a visit to the site, the zoning enforcement officer approved the application on May 8, 1995. ROR, Exhibit 1. Construction of the addition commenced soon CT Page 5167 thereafter. The issuance of the permit came to the attention of the Plaintiffs, the owners of the abutting property at 50 Pawcatuck Avenue, when construction commenced, and they complained to the zoning enforcement officer regarding the close proximity of the proposed addition to the boundary line which separated the two properties. ROR, Exhibit S at p. 32. On June 22, 1995, the zoning enforcement officer issued a cease and desist order directing the Garrappas to halt construction of the addition pending establishment of their western boundary line, i.e. the boundary line between their property and the Plaintiffs' property. ROR, Exhibit 6. Subsequent to the issuance of the cease and desist order, the zoning enforcement officer was furnished with a sketch prepared by James L. Kasierski, a registered land surveyor, depicting the relationship of the existing foundation of the Garrappas' home and certain iron markers which Mr. Kasierski had located at the premises. ROR, Exhibit 7. Following his review of the sketch and a discussion with Mr. Kasierski and others, the zoning enforcement officer rescinded the cease and desist order by letter dated July 3, 1995. ROR, Exhibit 17. On July 14, 1995, Plaintiffs appealed to the ZBA. ROR, Exhibit C. A public hearing was held by the ZBA on September 12, 1995, at which time several of the plaintiffs, their attorney, the Garrappas' attorney and the zoning enforcement officer were heard by the Board. ROR, Exhibit S. On October 10, 1995, the ZBA met and, following discussion, unanimously[2] denied the appeal based upon its findings that (i) the town had acted properly in the issuance of the permit and the cease and desist order as well as the subsequent rescission of that order, and (ii) there was no evidence that the zoning enforcement officer or the town had acted improperly. ROR, Exhibit T. Additional facts will be provided as warranted.
ISSUES
The issues raised by Plaintiffs may be generally described as follows:
(1) that the Garrappas' application for a permit lacked sufficient information to determine whether the proposed addition would be in compliance with applicable zoning regulations;
(2) that the zoning enforcement officer lacked sufficient information to rescind the cease and desist order which he CT Page 5168 had previously issued; and
(3) that a member of the Board, subsequent to the close of the public hearing, visited the site by himself and commented on his observations to other members when the Board next convened to vote on Plaintiff's appeal from the zoning enforcement officer's issuance of the permit and rescission of the cease and desist order.
AGGRIEVEMENT
C.G.S. § 8-8 confers jurisdiction upon this Court to review the actions of a zoning board of appeals. A party bringing an appeal must be aggrieved by a decision of the board.Walls v. Planning and Zoning Commission, 176 Conn. 475, 477,408 A.2d 252 (1979). As the owners of land abutting the Garrappas' property which is the subject of this appeal, Plaintiffs are statutorily aggrieved persons pursuant to C.G.S. § 8-8 (a)(1).
SCOPE OF JUDICIAL REVIEW
This Court's scope of review on appeal from a decision of the zoning board is limited. It is the zoning board's responsibility to find the facts and to apply the pertinent zoning regulations to those facts. Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 90, 626 A.2d 744 (1993). In doing so, the board is empowered with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Double I LimitedPartnership v. Planning and Zoning Commission, 218 Conn. 65, 72,588 A.2d 624 (1991). The zoning board is entrusted with the function of interpreting and applying its regulations. Toffolonv. Zoning Board of Appeals, 155 Conn. 558, 560, 236 A.2d 96
(1967). The undertaking of that function by the court "would be an impermissible judicial usurpation of the administrative functions of the authority." Bogue v. Zoning Board of Appeals,165 Conn. 749, 754, 345 A.2d 9 (1974). "It is well settled that courts are not to substitute their judgment for that of the board, and that the decision of the local boards will not be disturbed as long as honest judgment has been reasonably and fairly made after a full hearing; Spectrum of Connecticut, Inc.v. Planning and Zoning Commission, 13 Conn. App. 159, 163,535 A.2d 382 (1988); as the credibility of witnesses and the determination of factual issues are matters within the province of an administrative agency. Feinson v. ConservationCT Page 5169Commission, 180 Conn. 421, 425, 429 A.2d 910 (1980)."Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 731-32,546 A.2d 919 (1988). The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. Huck v. InlandWetlands and Watercourses Agency, 203 Conn. 525, 540,525 A.2d 940 (1987). Evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Huck, supra at 541. If the Board fails to give reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken.Connecticut Resources Recovery Authority v. Planning and ZoningCommission, 225 Conn. 731, 743, 626 A.2d 705 (1993). The burden of proof to demonstrate that the Board has acted improperly is on the Plaintiffs. Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988).
SUFFICIENCY OF THE APPLICATION FOR A PERMIT
Plaintiffs allege that the Garrappas' application for a permit was deficient in many respects. Most notably, Plaintiffs contend that the site plan submitted as part of the Garrappas' application did not include certain required information and lacked sufficient detailed information necessary to a determination whether the proposed construction would comply with the zoning regulations. Plaintiffs further claim that information contained in the application and related submissions was inaccurate, insufficient and contradictory, thus likewise preventing a determination of compliance with the zoning regulations. Specifically, Plaintiffs identify floor area ratio requirements and side yard restrictions as subjects of zoning regulations concerning which a determination of compliance could not be made based upon the allegedly deficient information provided by the Garrappas.
The zoning regulations of the Town of Stonington (ROR, Exhibit 24) provide for the issuance of a permit when all applicable findings of compliance are made. ROR, Exhibit 24 at Section 8.2.1. In determining compliance, the zoning enforcement officer has various powers including, without limitation, the right to conduct on-site inspections and to require such information as may be needed to properly determine the facts of any issue under the regulations. ROR, Exhibit 24 at Sections 8.2.1.2 and 8.2.1.3. The application for a permit CT Page 5170 must include, inter alia, a site plan showing the proposal in sufficient detail to allow appropriate findings of compliance with the regulations. ROR, Exhibit 24 at Section 8.2.2.2. The type of construction proposed by the Garrappas required the submission of a Type 1 site plan. ROR, Exhibit 24 at Section 8.3.2. The elements of a Type 1 site plan are set forth in Section 8.4.1 of the regulations, however the zoning enforcement officer has discretion to require only those elements of a Type 1 site plan necessary to demonstrate compliance with the regulations. ROR, Exhibit 24 at Section 8.3.1.1.
The Plaintiffs claim that the Garrappas' site plan was deficient. This contention requires a preliminary discussion as to what constitutes a site plan. A site plan consists of more than a diagram or physical plan showing the layout and design of the site of a proposed use. It includes the entire package of documents submitted to the zoning commission or appropriate zoning official to aid in determining the conformity of a proposed building, use or structure with specific provisions of the applicable zoning regulations. SSM Associates LimitedPartnership v. Planning and Zoning Commission,15 Conn. App. 561, 566, 545 A.2d 602 (1988), aff'd, 211 Conn. 331,559 A.2d 196 (1989). As such, it constitutes more than the sketch to which Plaintiffs allude; ROR, Exhibit 3; it also encompasses the application and all other information submitted therewith to the zoning enforcement officer. As Plaintiffs' counsel acknowledged at argument, the zoning regulations at issue here are somewhat unusual in requiring the submission of a site plan for the construction of an addition. See also Fuller, Land Use Law and Practice, Section 6.2. This may well account for the discretion vested in the zoning enforcement officer to require only those elements of a Type 1 site plan necessary to determine compliance with the zoning regulations. ROR, Exhibit 24 at Section 8.3.1.1. Plaintiffs complain that the Garrappas' site plan fails to include the elements identified in Section 8.4.1 of the regulations. Given the limited nature of the proposed construction (an addition), however, many of the elements set forth in Section 8.4.1 were wholly unnecessary to a determination of compliance with the regulations. The Court finds that many of the elements are contained in the site plan (as previously defined) including, most notably, the identification of existing buildings, proposed buildings with dimensions, and distances on all sides between buildings and property lines as measured on the site. CT Page 5171
The portion of the regulations as to which Plaintiffs claim a determination of compliance could not be made involve floor area ratio[3] limitations and side yard restrictions. Both of these issues require that a threshold determination be made requiring the proper zone classification of the premises. The zoning enforcement officer applied the bulk requirements applicable to an RH-10 zone classification. ROR, Exhibit S at p. 43. Although the Garrappas' application indicates that the premises are located in a RA-15 zone (providing for a maximum floor area ratio of .20 and a minimum side yard restriction of ten feet; see ROR, Exhibit 24 at Table 5.1.1), the Garrappas' lot has 50 feet of frontage and 150' of depth. ROR, Exhibits 1 and 3. Consequently, the property qualifies as an undersized lot (ROR, Exhibit 24 at Section 2.9.2) and, as such, is subject to the bulk requirements which apply to an RH-10 zone (providing for a maximum floor area ratio of .25 and minimum side yard restriction of a total of 20 feet with neither side being less than five feet; see ROR, Exhibit 24 at Table 5.1.1).
Plaintiffs allege that the zoning enforcement officer lacked sufficient information regarding the dimensions of the existing and proposed structures to determine compliance with the floor area ratio requirements contained in the regulations. They suggest that, regardless of whether the bulk requirements of the RA-15 or RH-10 zones are used, the information provided to the zoning enforcement officer establishes that the gross floor area of the existing and proposed structures exceeds the ratios permitted under the regulations. Brief of Plaintiff, at p. 7. Critical to this contention is the inclusion of 475 square feet of alleged "basement space", infra. Although the submissions to the zoning enforcement officer are not wholly consistent with regard to dimensions, it is clear that, without the inclusion of the alleged basement space, no analysis of the information provided establishes an excessive floor area ratio. The information provided to the zoning enforcement officer evidences the construction of an addition having dimensions of 14 feet by 27 feet (378 square feet on each floor of the two-story addition for a total of 756 square feet). The dimensions of the existing structure, as set forth in the application (ROR, Exhibit 1) as well as the sketch (ROR, Exhibit 3), are 28 feet by 32 feet (for a total 896 square feet). Using these dimensions, the zoning enforcement officer found a floor area ratio of 1,652 square feet (756 square feet plus 896 square feet); ROR, Exhibit S at p. 44; a figure well below the maximum permitted floor area ratio of 1,875 square feet, supra. Indeed, CT Page 5172 the dimensions used in the application and sketch ignore the fact that the existing structure is not perfectly rectangular and, consequently, the total square footage appears to be significantly less than 1,652 square feet. See ROR, Exhibit 2.[4]
As indicated above, the floor area ratio analysis is significantly impacted by the inclusion or non-inclusion of 475 square feet of alleged basement space. If that space is included in the calculation, the floor area ratio is excessive; if it is not included, the floor area ratio is well below the limits established by the regulations. Whether or not this space should be included requires a determination as to whether the underground portion of the structure is a basement or a cellar. Section 1.2.2.42 of the regulations provides that the gross floor area of a building includes basement space, but not cellar space. ROR, Exhibit 24. A basement is defined as that "portion of the building that is partly underground which has more than half of its structural headroom above the average finished grade adjoining the building." ROR, Exhibit 24 at Section 1.2.2.10. The zoning enforcement officer is empowered to conduct on-site inspections in connection with the application process. In order to evaluate the Garrappas' application, the zoning enforcement officer visited the site (ROR, Exhibit S at p. 41-42) and determined from his view of the premises that the underground space is not a basement within the definition contained in the regulations. ROR, Exhibit S at p. 44. Photographs of the Garrappas' residence supports the conclusion that the underground space is not basement space as so defined. ROR, Exhibit 20c. Accordingly, without the inclusion of underground space, the information provided to the zoning enforcement officer amply demonstrates compliance with the floor area ratio requirements contained in the regulations.
Plaintiffs likewise contend that the information supplied to the zoning enforcement officer was insufficient to enable him to determine whether the Garrappas' proposed construction complied with the side yard restriction contained in the regulations (no less than 20 feet total on both sides nor less than five feet on either side, supra). The documents furnished to the zoning enforcement officer as part of the application, however, demonstrate the proposed construction to be in compliance with the side yard restriction. Plaintiffs point to the application; ROR, Exhibit 1; and note the inconsistency between a lot purporting to be 50 feet in width CT Page 5173 and a house having a width of 28 feet and side yard setbacks of 17 feet and 6 feet (for a total of 51 feet). This difference of one foot (which difference is not reflected on the sketch of the property; ROR, Exhibit 3) fails to establish a violation of the side yard restriction. The total minimum side yard setback of 20 feet is not violated regardless of whether one uses the side yard information from the application (17 feet and 6 feet for a total of 23 feet) or the sketch (16 feet and 6 feet for a total of 22 feet). Significantly, the one foot discrepancy between the two documents is on the side of the Garrappas' property furthest from the Plaintiffs' property; the Garrappas' side yard abutting Plaintiffs' property is consistently identified in the two documents as being 6 feet in width. (Even if the one foot differential were taken off the side yard abutting the Plaintiffs' property, the remaining width of 5 feet would not be in violation of the side yard restriction contained in the regulations). Accordingly, the Court concludes that the information presented to the zoning enforcement officer as part of the application, together with his view of the site, furnished a sufficient basis from which to find compliance with the side yard restriction contained in the regulations.
RESCISSION OF THE CEASE AND DESIST ORDER
As noted above, the Plaintiffs contacted the zoning enforcement officer upon learning of the issuance of the permit and expressed their concern regarding the proximity of the proposed construction. On June 22, 1995, the zoning enforcement officer issued cease and desist order #9511 (ROR, Exhibit 6) because of a possible discrepancy in the boundary line separating the Garrappas' property from the Plaintiffs' property and the resulting concern that the proposed addition might violate the five foot side yard restriction. The Garrappas were ordered to halt construction pending establishment of the boundary line by a licensed surveyor.
The Garrappas subsequently retained a registered land surveyor, James L. Kasierski, who prepared a sketch depicting the relationship of (i) the foundations of the existing structure on the Garrappas' property and (ii) certain iron markers which he had identified. ROR, Exhibit 7. The Kasierski sketch disclaims any intent to reflect property line information and expressly provides that any dimensions noted were subject to changes that an accurate survey might reveal. The zoning enforcement officer thereafter met with Kasierski and discussed CT Page 5174 his observations. He also met with other town officials, including the town engineer and the director of planning. Based upon these discussions and his review of the Kasierski sketch and the original 1902 subdivision plat, the zoning enforcement officer rescinded the cease and desist order on July 3, 1995. ROR, Exhibit 17.
Plaintiffs contend that the cease and desist order, by its terms, required the commissioning of a survey to establish the boundary line and, in the absence of such a survey, the cease and desist order could not be properly rescinded. They further contend that the zoning enforcement officer had insufficient information regarding the boundary line (and, therefore, compliance with the side yard restriction) to rescind the cease and desist order. The Court disagrees.
It is unclear whether, in issuing the cease and desist order, the zoning enforcement officer was requiring the preparation of a full survey as a condition of continued construction. The zoning enforcement officer himself disclaimed any such intent. ROR, Exhibit S at p. 47-48. Nothing in the regulations, however, requires the preparation of such a survey. Hence, even if the zoning enforcement officer initially exercised his discretion to require a survey under the circumstances, it certainly was within his discretion as well to forego such a survey when presented with other evidence which he deemed to sufficiently demonstrate compliance with the regulations.
The evidence which prompted the zoning enforcement officer to rescind the cease and desist order is set forth in his letter of July 3, 1995; ROR, Exhibit 17. Unfortunately, town land records contained no deed descriptions for the Garrappas' property. Instead, all records refer to a plat, dated December 1902, entitled "Plan Showing Allotment of the Highlands". ROR, Exhibit 8. The Garrappas' lot (number 204), like all other lots on the block of Pawcatuck Avenue between Trumbull and Andrews Streets, had 50 feet of frontage (width) and 150 feet of depth. The Garrappas' property is the second lot to the west of Andrews Street. Plaintiffs' property (lot number 205) is the third lot to the west of Andrews Street. As a result of his site inspection, Mr. Kasierski identified, and his sketch reflects, a wall located approximately 50 feet west of Andrews Avenue. This wall appears to represent the eastern boundary of the Garrappas' property. Moving westerly down CT Page 5175 Pawcatuck Avenue from that wall, the next marker identified by Kasierski, located four inches below the eastern edge of Plaintiffs' driveway, was an iron pipe. This pipe was approximately 48 feet west of the aforementioned wall. The next marker located by Kasierski was an iron rod found approximately 52 feet (actually 51.92 feet) westerly on Pawcatuck Avenue from the aforementioned iron pipe. The conclusion to be drawn from the foregoing (and which both the zoning enforcement officer and Board drew) is that the southwestern boundary of the Garrappas' property is not at the eastern edge of Plaintiffs' driveway but, rather, approximately two feet (actually 1.92 feet) west of the edge of the driveway. Stated differently, measuring 50 feet (the frontage of all lots on the block) west from the wall and east from the iron rod, one winds up at approximately the same point, to wit: approximately two feet west of the eastern edge of Plaintiffs' driveway. Based upon this analysis of the monuments and markers described above, a finding was made by the zoning enforcement officer that the addition was approximately 6.5 feet from the boundary separating the properties and, hence, in compliance with the side yard restriction.[5] The Court finds that the rescission of the cease and desist order was supported by substantial evidence that the proposed addition was in compliance with the regulations.
THE BOARD MEMBER'S SITE VISIT
It is undisputed that a member of the Board, Mr. Newton, visited the site subsequent to the public hearing held on September 12, 1995 and prior to the October 10, 1995 meeting of the Board at which Plaintiffs' appeal was denied. It appears from the record that Mr. Newton went alone to the site. The minutes of the October 10, 1995 meeting (ROR, Exhibit T) state, in relevant part, that:
 Mr. Newton described visiting the site and walking from stone wall to stake 50 ft. and went down to the marker below where Mr. Garrappa has 51.92 ft. He said that the footprint didn't change; that Mr. Larkin had enough information to make his decision.
Although the minutes do not so reflect, Plaintiffs' claim (and the Court will assume for purposes of its ruling) that the Chairman of the Board, prior to undertaking discussion of the appeal, announced that the public hearing was closed and that CT Page 5176 the Board would not hear further comments or evidence from either of the parties. Plaintiffs contend that, without having had the opportunity to cross examine Mr. Newton regarding his statements or otherwise dispute the information he had gathered from his site visit, they were denied due process.[6] The Court disagrees.
It is customary for commission members to make site visits. See Samperi v. Inland Wetlands Agency, 226 Conn. 579,628 A.2d 1286 (1993); Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 484 A.2d 483 (1984). They are entitled to take into consideration knowledge they acquire by personal observation. Burnham v. Planning and Zoning Commission,189 Conn. 261, 267, 455 A.2d 339 (1983); Dubiel v. Zoning Board ofAppeals of Town of East Hartford, 147 Conn. 517, 522,162 A.2d 711 (1960). The minutes of the October 10, 1995 meeting do not disclose that Mr. Newton conducted any tests or uncovered any "evidence" during his visit; indeed, it appears that he communicated to the remaining members of the Board nothing more than that which they had already heard from the zoning enforcement officer and observed from the Kasierski sketch.[7]
He did not purport to provide the remaining members with information of a technical nature. He simply related to them what he had observed at the premises. Although Plaintiffs' claim that they were denied the right to cross examine Mr. Newton or otherwise dispute his observations with other evidence, a commission is not required to provide an opportunity for rebuttal when it relies on the knowledge and experience of one of its members on non-technical issues. Brookfield PlazaLimited Partnership v. Zoning Commission, 21 Conn. App. 489,493-94, 574 A.2d 825 (1990). Mr. Newton's observations do not rise to the level of a technical issue. Moreover, it does not appear from the record that Plaintiffs, at the public hearing, disputed the matters which Mr. Newton corroborated as a result of his visit to the site. Rather, they took issue with the inferences which might be drawn from the physical appearance of the site and the landmarks and markers identified in the Kasierski sketch.
Plaintiffs' reliance on Grimes v. ConservationCommission of Town of Litchfield, 43 Conn. App. 227,682 A.2d 593 (1996), certification granted in part 239 Conn. 943,686 A.2d 121 (1996), is misplaced. As the Court there expressly noted, it was not addressing the due process issue presented by Plaintiffs herein, to wit: the alleged consideration of evidence CT Page 5177 received outside a public hearing. Rather, the Court there addressed that aspect of due process relating to the noticerequired in connection with a site visit by the commission at which it was accompanied by and heard from an expert for one of the parties. Grimes, supra at 234, fn. 11. Plaintiffs' further reliance upon Cole v. Planning and Zoning Commission,40 Conn. App. 501, 671 A.2d 844 (1996), which comments with approval regarding the propriety of site visits; Cole, supra at 509; is equally unavailing. In Cole, the commission member, following her site visit, communicated to the remaining commission members the results of certain noise level readings which she had conducted at the site and further referred to technological advances which had been achieved in the production of quieter equipment. In contrast to the information provided by Mr. Newton, the information communicated in Cole was clearly technical in nature, presented new matter for the commission's consideration and involved factual issues which were in direct dispute between the parties.
Accordingly, the Court concludes that the alleged failure of the Board to permit cross examination of Mr. Newton or to allow the introduction of evidence in response to his comments did not deprive Plaintiffs of due process because his comments (i) were non-technical in nature and did not give rise to a right of examination or rebuttal, (ii) were merely repetitive of information brought before the Board at the public hearing at which Plaintiffs did have a full and fair opportunity for examination and rebuttal, and (iii) related to physical observations which were not disputed by the Plaintiffs except as to the inferences to be drawn therefrom.
CONCLUSION
Substantial evidence supported the Board's finding that the permit was properly issued to the Garrappas and that the cease and desist order was properly rescinded. The Court further finds that Plaintiffs were not denied due process by reason of the Board member's visit to the site following the conclusion of the public hearing and his communication to other Board members of the limited observations which he made at that time. The Court finds that the action of the Board in denying Plaintiffs' appeal from the issuance of the permit and the rescission of the cease and desist order was a proper action. Accordingly, Plaintiffs' appeal is dismissed. CT Page 5178
Dated at Norwich, Connecticut this 14th day of May, 1997.
Shortall, Judge