[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ADMINISTRATIVE APPEAL FROM DEFENDANT'S DENIAL OF PLAINTIFFS' SITE PLAN APPLICATION
CT Page 12609
This administrative appeal arises out of the denial of an application for site plan approval made to the zoning authorities of the town of Ridgefield. Presently, the administrative appeal is on remand from the Appellate Court, R R Home Pool Inc. v.Zoning Board of Appeals, 43 Conn. App. 563, 687 A.2d 1207 (1996), which reversed in part the trial court's decision that R R Home Pool, Inc. (R R) did not have standing to appeal the Zoning Board of Appeals'(board) decision. As such, the Appellate Court remanded the case for further proceedings on the merits of the plaintiffs' claims.
The plaintiffs' amended appeal alleges the following facts.[1] The subject property is located at 975 Ethan Allen Highway in the town of Ridgefield. Neil Farans, Alvin Farans and Diane Green (owners), own the subject property, and currently lease the premises to R R. The property is located within a B-2 zone, in which wholesale sales are permitted, but retail sales are not. In 1990, however, the defendant board granted a variance to a previous lessee of the property, Richard Amatulli, that allowed for the limited retail sale of "oriental rugs, fine furniture and art."[2]
On July 2, 1993, the owners' attorney, Melvin Silverman, filed an application for site plan approval for the subject property with the town planning director, Oswald Inglese. The plaintiffs allege that this application for site plan approval was exactly the same as Amatulli's application for site plan approval, which Inglese had approved in 1990. By letter dated September 24, 1993, the planning director denied the plaintiffs' application. On October 7, 1993, the owners and R appealed the planning director's decision to the board. On February 14, 1994, the board sustained the decision of the planning director.
On February 24, 1994, the plaintiffs filed an administrative appeal with the superior court and on July 29, 1994, they amended their complaint. In their amended complaint, the plaintiffs requested that the court direct the defendant to sustain their appeal from the planning director's decision.
The trial court, however, determined that R R lacked standing and dismissed the appeal; but as previously discussed, the Appellate Court reversed that portion of the trial court's decision. R R Home Pool. Inc. v. Zoning Board of Appeals, CT Page 12610 supra, 43 Conn. App. 574. On remand, the Appellate Court directed that the trial court address the merits of the action. Id. Consequently, the matter is currently before this court.
"A statutory right of appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport BowlO-Rama, Inc. v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). The plaintiff bears the burden of proving aggrievement. Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991). An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
The Appellate Court in R R Home Pool Inc. v. Zoning Boardof Appeals, supra, 43 Conn. App. 570, specifically held that R 
R was aggrieved by the board's decision. Additionally, the Farans and Green are the owners of the subject property, and as such, they are entitled to appeal the board's decision. Id., 564-65. Accordingly, the plaintiffs are all aggrieved.
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by general statutes." "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. . . ." General Statutes § 8-8 (e).
The board's decision denying the plaintiffs appeal for site plan approval was published on February 10, 1994. The plaintiffs commenced this action through service of process upon both the chairman of the Ridgefield Zoning Board of Appeals, and the town clerk of Ridgefield, on February 18, 1994. Therefore, the appeal is timely. CT Page 12611
The Ridgefield Planning and Zoning Commission, pursuant to Ridgefield zoning regulation § 324.0. A and B, has established that all site plan applications are to be filed with the Ridgefield planning director. Thus, the planning director is charged with the determination of whether a site plan application is to be granted or denied. Ridgefield zoning regulation § 324.0. B.
"Proceedings before planning and zoning commissions are classified as administrative." (Internal quotation marks omitted.) DeBerandinis v. Zoning Commission, 228 Conn. 187, 198,635 A.2d 1220 (1994). "Conclusions reached by the [planning director] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The evidence, however, to support any such reason must be substantial. . . ." (Citations omitted; internal quotation marks omitted.) Id., 198-99.
Ridgefield zoning regulation § 324.0.G, however, provides that a site plan applicant may appeal the planning director's decision to the Ridgefield Zoning Board of Appeals.[3] In the present case, the plaintiffs opted for this route of appeal as opposed to a direct appeal to the superior court. See Castellonv. Board of Zoning Appeals, 221 Conn. 374, 377, 603 A.2d 1168
(1992). A zoning board of appeals is "endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that a board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we . . . review the record to determine whether there is a factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994). "It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." (Citations omitted.) Id., 90. "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. Board of Appeals, supra, 217 Conn. 440. CT Page 12612
"[W]here a zoning [board of appeals] has formally stated the reasons for its decision, the court should not go behind that official collective statement of the [board]. . . . The reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) West Hartford Interfaith Coalitions, Inc. v. TownCouncil, 228 Conn. 498, 513-15, 636 A.2d 1342 (1994).
"A site plan is a plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and their relation to adjacent uses and roads, and containing the information required by the zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations." (internal quotation marks omitted.) CRRA v.Planning Zoning Commission, 46 Conn. App. 566, 570,700 A.2d 67 (1997).
"[T]he term site plan," as used in [General Statutes] §8-3 (g), is a general term which is used in a functional sense to denote a plan for the proposed use of a particular site, purporting to indicate all the information required by the regulations for that particular use. As such, it includes theentire package of documents submitted to a zoning . . . official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such [zoning] regulations." (Emphasis added; internal quotation marks omitted.)SSM Associates Limited Partnership v. Plan Zoning Commission,15 Conn. App. 561, 566, 545 A.2d 602, aff'd, 211 Conn. 331,559 A.2d 196 (1989).
"In reviewing and approving site plans the [planning director] acts in an administrative capacity." (Internal quotation marks omitted.) Norwich v. Norwalk Wilbert Vault Co.,208 Conn. 1, 12, 544 A.2d 152 (1988). The planning director "has no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and the director] is under a mandate to apply the requirements of the regulations as written." (Internal quotation marks omitted.) Id., 13. CT Page 12613
On July 2, 1993, the owners submitted their application for site plan approval for the premises located at 975 Ethan Allen Highway. In accordance with Ridgefield zoning regulation § 324.0.D (1)-(5), the owners, in their application to the planning director, included: (1) a new application; (2) the required fees; (3) two copies of Amatulli's 1990 site and floor plans for 975 Ethan Allen Highway; (4) a letter indicating their intended uses of the property; and (5) a copy of Inglese's decision approving Amatulli's 1990 site plan application. In their letter, which was part of the site plan application, the owners stated that they wished "to lease the premises to a seller of fine furniture [R 
R], albeit of the type which is used generally out of doors. Because the interior allocation of the space will be exactly as that shown on the previously submitted plans [Amatulli's site and floor plans] which appear in your file, no parking variance is required."
On July 13, 1993, Inglese wrote to the owners' attorney and inquired about the site plan map that had been submitted as part of the site plan application.[4] Specifically, Inglese wrote, "I did see an area outside the building designated for the display/storage of items for sale." Inglese further inquired whether there was to be any outside display or storage on the premises, and whether the area of the building devoted to retail was to be exactly the same as that of Amatulli, the previous tenant. Finally, Inglese requested that the owners, in order to complete their application, include exterior elevations and a location plan for the premises.
On August 6, 1993, the plaintiffs wrote to Inglese and stated that the answer to his first question was yes: The interior of the building dedicated to retail was identical to that of the previous tenant Amatulli. The plaintiffs' second response to the question of whether they would have outside display or storage was: "They would do whatever the law permitted them to do."
The record indicates that this second response was met with a great deal of hostility by the board, as the board felt that the plaintiffs were not being completely forthright in their responses. Yet, despite the tension created by the plaintiffs' response at the hearings, the planning director did not use this response as a reason for the denial of the owners' site plan application. CT Page 12614
On September 24, 1993, Inglese denied the plaintiffs' site plan application, and included three reasons for his decision. First, Inglese stated:"The business you are planning to operate, with the merchandise you are proposing to sell, is not the `finefurniture' contemplated by the Zoning Board of Appeals in its decision on Nov. 5, 1990 in appeal No. 90-099." Second, the decision stated that "the business you are proposing to operate, with the merchandise you are planning to sell, was specifically denied a variance to do so by the Zoning Board of Appeals at its June 21, 1993 meeting on Appeal No. 93-014." The third reason was as follows: "Retail sales is not a permitted use in a B-2 Zone." As a result of the decision, the plaintiffs appealed to the defendant Zoning Board of Appeals.
The record in this matter is quite extensive, and the function of the court is to determine whether there was substantial evidence in the record before the board to support its conclusion that the plaintiffs' site plan application was properly denied.
The board, in reaching its decision, stated eight reasons for its conclusion that the plaintiffs' appeal should be denied. The court will examine each reason seriatim, and determine whether these reasons are "reasonably supported" by the evidence in the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning 1 regulations. See Friedman v. Planning Zoning Commission,222 Conn. 262, 608 A.2d 1178 (1992) (reasons of commission must be "reasonably supported by the record.")
 Reason One
The board's first reason for its denial of the plaintiffs' appeal is not a "reason" at all, but rather it is a statement of fact. The board stated that General Statutes § 8-3 (g) authorizes the use of the site plan approval procedure, and that the planning director is charged with the determination of whether a use conforms with the applicable zoning regulations.
Although, it is undisputed that § 8-3 (g) authorizes the site plan approval procedure, and that the Ridgefield planning director, pursuant to Ridgefield zoning regulation § 324.0. B, is the individual charged with the determination of the validity of site plan applications, the board must review the planning director's decisions de novo, and cannot simply defer to CT Page 12615 the planning director's judgment. See Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 88-89, 626 A.2d 744 (1993) (action of zoning enforcement officer subject to de novo review by zoning board of appeals.)[5] In any event, as the board's statement is not a reason for the denial of the plaintiffs' appeal, the court will not address this further.
 Reason Two
Again, the board's second reason, initially focuses on the role of the planning director in this matter. The board concluded that "[t]he [p]lanning [d]irector made no error in his decision to deny the site plan approval in this case," because the plaintiffs "failed to adequately show" the planning director what was the intended use for the property.
The board also notes in its decision that the plaintiffs "would not even tell the board what was fully intended for the property," and therefore there was no way to tell if the "proposal would be in harmony with the zoning regulations, such as parking, lot coverage, etc."
Finally, the board observes in its decision that the "burden of proof" is on the applicants when applying for site plan approval, and not on the planning director; and in this case, the board found that the applicants did not carry their burden of proof.
The court must first address a central and recurring problem with the board's decision in this action. The board, in virtually every reason stated for the denial of the plaintiffs' appeal, repeatedly refers to the appropriateness of the planning director's decision in his denial of the plaintiffs' application for site plan approval. Yet, the board's extensive reliance on the planning director is somewhat misplaced in light of the standard of review appropriate for a zoning board of appeals.
The Connecticut Supreme Court, in Caserta v. Zoning Board ofAppeals, supra, held that a zoning board of appeals hears and decides an appeal from a zoning enforcement officer's decision "de novo." Id., 88-89; see also Conetta v. Zoning Board ofAppeals, 42 Conn. App. 133, 137, 677 A.2d 987 (1996). In Casertav. Zoning Board of Appeals, the court stated: "Our case law further reinforces the de novo nature of the hearing conducted by the zoning board of appeals. It is the board's responsibility, CT Page 12616 pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." Id., 90; Conetta v. Zoning Board of Appeals, supra,42 Conn. App. 137. "In doing so, the board is endowed with a liberal discretion. . . . Indeed, under the appropriate circumstances, the board may act upon facts which are known to it even though they are not produced at the hearing." (Citations omitted; internal quotation marks omitted.) Caserta v. Zoning Board ofAppeals, supra, 226 Conn. 90.
As the court in Caserta v. Zoning Board of Appeals, makes clear, it is imperative for the zoning board of appeals to take into account the entire record available to the board at itshearing, and not simply the evidence that was before the planning director when the initial decision is made. "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonablysupported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Emphasis added; internal quotation marks omitted.) Caserta v. Zoning Board of Appeals, supra,226 Conn. 86-87. For purposes of this standard, a "zoning agency" is the equivalent of a "zoning board of appeals." Id., 87.
In light of the foregoing, the board's determination that the plaintiffs did not provide the planning director with sufficient information with which to render an informed decision is irrelevant.[6] Moreover, during the hearings, the plaintiffs provided the board with voluminous evidence in support of their site plan application.
Additionally, the board's statement that the plaintiffs did not inform the board as to their intended use of the property is not supported by the record. As was discussed previously, a site plan application is not limited to just the layout of the premises, or a map. See SSM Associates Limited Partnership v.Plan Zoning Commission, supra, 15 Conn. App. 566. The application includes all the documents submitted, in their entirety, that demonstrate the intended use of the property. Id. Thus, the plaintiffs' letters to Inglese, which were submitted as part of the site plan application, were a part of the application. These letters were also part of the record before the board.
The plaintiffs' letters indicate that site plan approval was CT Page 12617 sought "for exactly the same uses approved [by Inglese] in [the] July 23, 1990, approval. . . ." The letters further state that "[i]f that approval did not include outdoor display and storage, then this approval will not. If that approval included such outside display/storage, then this one will. In other words, [the plaintiffs] are asking you for the exact same approval which you granted on July 23, 1990, for these premises. . . ."
After these exhibits were entered into the record, the board questioned the plaintiffs' attorney extensively concerning the precise meaning of the plaintiffs' request. As a result of this discussion, the board concluded that the responses of the plaintiffs' attorney to its inquiries were evasive and not forthright. The record reflects otherwise, however.
The relevant portions of the transcript with respect to this matter demonstrate the board's unwillingness to simply accept the answers of the plaintiffs' attorney. While it is true that the plaintiffs' attorney may have been cautious in some of his responses, ultimately he was only requesting a use consistent with the previous site plan application. If the regulations allowed outdoor storage and display, then the plaintiffs wanted it. If the regulations did not allow for outdoor storage and display, then the plaintiffs did not want it.
The record also reflects that the plaintiffs' application for site plan approval was for the same use as that approved for Amatulli, the previous tenant. The plaintiffs' expressly asked for the identical approval that Amatulli received. Upon review of the entire record, the court finds that the plaintiffs requested the identical site plan approval that the prior tenant Amatulli received, but, as described above, the plaintiffs were unsure of exactly what that constituted. Therefore, in their application for site plan approval they submitted the same map of the premises that Amatulli submitted, with an identical layout. The only difference between the two site maps is that the plaintiffs' map included the word "display" in five areas that were external to the actual building; while Amatulli's map did not. Nonetheless, this fact, when viewed in conjunction with the letters included in the site plan application, demonstrate that the plaintiffs were merely requesting an outdoor display, if itwas permitted. Conversely, if the regulations did not permit outdoor display or storage, then the plaintiffs were not requesting it.[7]
CT Page 12618
Finally, the board's insistence that the plaintiffs had the "burden of proof' when applying for site plan approval, even if accurate, is not dispositive. The plaintiffs, even if they had the burden of proof, met their burden. Inglese, in a letter dated July 13, 1993, to attorney Silverman, told Silverman that in order to "complete the [plaintiffs' site plan] application," he was to include "exterior elevations" and a "location plan" for the property. On August 6, 1993, Silverman provided Inglese with the additional information requested, and therefore the plaintiffs' application was complete.
Also with regard to the board's "burden of proof" claim, no definitive statement of the law on this issue was found, but Ridgefield zoning regulation § 324 is instructive. Section 324.0.D (1)-(5) sets forth the minimum requirements for site plan approval applications. These first five subsections are administrative requirements; if an applicant submits a complete application for site plan approval under the section, then the planning director must act on the application, or after 65 days it will be granted by operation of law. See Ridgefield Zoning Regulations § 324.0. B; Carr v. Woolwich, 7 Conn. App. 684,695, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 699
(1986). Subsection (6) of § 324.0., however, mandates that an applicant supply "[a]ny other information which in the director'sjudgment will assist in evaluating the proposal." (Emphasis added.) Absent a request from the planning director, it is difficult to see how an applicant has the "burden" to produce any other information, when the applicant cannot possibly know what information "in the director's judgment," will be needed. As stated previously, Inglese's final correspondence to the plaintiffs on July 13, 1993 states: "Also, to complete the application, please include . . . exterior elevations . . . and, a location plan. . . ." Thus, the letter indicates that Inglese only needed the two aforementioned pieces of information to complete the application; no other information was requested to complete the application, even though further information could have been requested.
The foregoing facts are apparent from the record, and the board's conclusion that the plaintiffs "would not even tell the board what was fully intended for the property," is unsupported by the facts as presented at the hearings.
 Reason Three
CT Page 12619
The board's third reason for the denial of the plaintiffs' appeal highlights the purported difference between Amatulli's site plan application and the plaintiffs' site plan application. The board states that Amatulli's site plan addressed only "a wholesale establishment, which [was] permitted in the B-2 zone." The plaintiffs, however, were not seeking approval for a "wholesale establishment," but rather the retail use of the premises, and therefore the plaintiffs' site plan application "was clearly substantially different, and the retail use did not meet the requirements of the zone." The board's distinction, however, is illusory in light of the record.
The record reflects the following additional facts. The subject property, 975 Ethan Allen Highway, is located in a B-2 zone where the use of the premises for wholesale is a matter of right. Amatulli's site plan application addressed only a "wholesale establishment" because that is all the property was zoned for at the time; the limited retail use variance had not yet been granted. Four months after Amatulli's site plan was approved, he applied for the limited retail use variance, which was subsequently approved. Amatulli, however, did not resubmit another site plan to use the property in accordance with the new limited use variance. Furthermore, the planning director never requested that Amatulli file a new site plan application for the premises.
As such, the board's denial of the plaintiffs' application, based upon its conclusion that the site plans were not identical, can only be reached by disregarding the 1990 variance. Although the site plan approved for the premises in 1990 was only for the wholesale use of the property, the limited retail use variance subsequently changed that use.
The record reflects that the plaintiffs' site plan application simply requested approval for the exact same uses of the premises as had been approved for Amatulli in 1990. The record also reflects that Amatulli did not need to submit an additional site plan after the variance was granted because the actual layout and physical use of the property did not change in any way.
In this case, the plaintiffs' site plan map is identical to the Amatulli site plan map, and the plaintiffs' layout and physical use of the property is exactly the same as was previously granted to Amatulli. As previously explained, the only CT Page 12620 difference was that the word "display" was included on the plaintiffs' map. The record shows that there was no physical difference between the site plan map approved for Amatulli, and the site plan map that was denied for the plaintiffs. Therefore, the record does not support the boards' denial of the plaintiffs' site plan application on the basis that it was not identical to the site plan application submitted by Amatulli.
 Reason Four
The board's fourth reason for the denial of the plaintiffs' appeal is at the heart of this appeal. In determining that the plaintiffs' furniture was not the "fine furniture" envisioned by the board when the Amatulli variance was granted, the board reasoned that the plaintiffs' proposed use of the property was not an authorized use. Therefore, the board denied the site plan application.
Before this reason can be addressed, however, some additional background, as revealed in the record, is necessary. In 1990, the previous lessee of the subject property, Amatulli, was a seller of extremely high quality oriental rugs. These rugs were handmade, imported from all over the world, and some sold for as much as $30,000. In 1990, the property was zoned for wholesale sales only; no retail sales were permitted. Therefore, if a customer walked into Amatulli's business, and wished to purchase an oriental rug directly from Amatulli, they could not do so because of the zoning regulations. Instead, customers would have to retain a contractor to purchase the oriental rug for them.
The board felt that this situation created a hardship, and therefore, it granted Amatulli's application for a variance to sell, at retail, "oriental rugs, fine furniture, and art." The board, in granting Amatulli the variance, also stated that the retail sale of these three items would not increase the traffic flow on or around the property, because relatively few consumers would purchase such expensive rugs.
The outcome of this appeal depends, in part, upon whether the board acted arbitrarily or unreasonably in its determination that the plaintiffs did not sell "fine furniture" as contemplated in the 1990 variance. Consequently, an examination of the transcripts from the 1990 variance application hearing and decision session is necessary. CT Page 12621
The transcript from Amatulli's variance hearing is twenty two pages long, but "fine furniture" was mentioned expressly only once. At the end of the hearing, Chairman Creamer stated: "[Amatulli] has no retail rights other than extremely expensive oriental rugs,"; to which Amatulli responded: "And fine furniture and art, as indicated on the application." The previous exchange is the extent of the consideration given to "fine furniture" at Amatulli's variance application hearing. Virtually all of the discussion focused on Amatulli's oriental rug business.
During the board's decision-making session on Amatulli's application, the record reflects that the board, itself, was unsure of what type of furniture Amatulli intended to sell. The following statements demonstrate this point. First, Chairman Creamer stated: "You know [Amatulli] is going to use [the property] for specific, for artistic rugs only," to which board member Hume responded, "[n]o, there is furniture," and board member Tippet interjected,"[a]nd fine art." Later in the discussion, Hume stated: "But he sells all kinds of furniture according to the picture," and board member Mannion replied: "But maybe they are all individually crafted. His biggest source is going to be carpets." Finally, Tippet summed up the board's position with respect to the issue of"fine furniture": "You are not going to be selling $30,000 rugs and then put in cheap Scandinavian furniture."
The foregoing represents the extent of the board's discussion concerning "fine furniture." The record does not demonstrate that the board offered any definitions, or any ascertainable guidelines or standards, upon which a subsequent owner or lessor of the subject property could have reasonably relied upon when selling furniture from the property.
With respect to the present appeal, the board's decision states that the term "fine furniture" was not "specifically described" at the previous hearings. Yet, the board also states in its decision that the variance should be read "in its entirety as having inherent unity of decision." Further, the board states that the plaintiffs' definition of "fine furniture" was not the kind of product presented to the board when the variance was requested, nor was it the kind of product contemplated by the board when the variance was granted. Finally, the board states that "[o]utdoor furniture simply does not fit [the definition of fine furniture]." CT Page 12622
The record, however, contains no factual evidence to support the board's conclusion that the plaintiffs' furniture is not the "fine furniture" contemplated by the 1990 variance. As indicated above, the board never defined the term "fine furniture" when it granted Amatulli the variance. It is further submitted that the court may also find the board's statement that the plaintiffs' furniture was not the "kind of product that was presented to the board when the variance was requested, and it is not the kind of product that was considered by the board when the variance was granted," to be misleading. The record reflects that Amatulli presented nothing pertaining to furniture during his hearing, and that the board focused almost exclusively on Amatulli's oriental rugs.
Additionally, during the course of the plaintiffs' hearings, they presented four witnesses who testified that a definition of "fine furniture" does not exist, and that the term is a fairly subjective one.[8] The witnesses also testified that in their opinions, the furniture that the plaintiffs proposed to sell was "fine furniture" because it was quite expensive and of a high quality. Finally, the witnesses stated that the plaintiffs' furniture could be used both indoors and outdoors, and that the indoor/outdoor distinction, standing alone, would not necessarily lower the quality of the furniture.
Additionally, the plaintiffs submitted numerous excerpts from dictionaries and other sources demonstrating the lack of any definition of "fine furniture." They also submitted catalogues and photographs of the furniture proposed to be sold at the property; most of which was expensive and would be appropriate for indoor use. Letters were also submitted, most notably from David Barquist, who is currently employed by Yale University and who has been published in the area of American furniture. These letters indicated that there is no definition of fine furniture, except that the terms when used together generally imply quality. All of the foregoing was made part of the record before the board, and none of the foregoing was refuted by any evidence. Most notably, the plaintiffs' witnesses' testimony stood unrefuted.
The record indicates that the board relied on its own subjective beliefs in its determination that the plaintiffs' furniture did not comport with the variance. "In evaluating whether the conclusions reached meet the substantial evidence standards, the credibility of witnesses is a matter within the CT Page 12623 province of the [board]. . . . [The board] is not required to believe any witness, even an expert." (Citation omitted; internal quotation marks omitted.) Bradley v. Inland Wetlands Agency,28 Conn. App. 48, 53-54, 609 A.2d 1043 (1992). Nonetheless, while the court recognizes that "an administrative agency is not required to believe any of the witnesses, including expert witnesses; Manor Development Corporation v. ConservationCommission, 180 Conn. 692, 697, 433 A.2d 999 (1980); it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge."Tanner v. Conservation Commission, 15 Conn. App. 336, 341,544 A.2d 258 (1988). Although, the determination of whether furniture is "fine" is generally not a technically complex issue, a certain degree of sophistication and familiarity with quality furniture is required before a true assessment of the subject matter can be made. The record reflects, however, that the board members did not possess any expertise or specialized knowledge of furniture that would permit them to completely disregard the uncontroverted testimony of the plaintiffs' witnesses.
The record also indicates that the board relied extensively on Inglese's decision with respect to the plaintiffs' furniture, even though his decision was based purely upon his own opinion. Inglese had neither been to the plaintiffs' store to see what type of furniture they sold, nor did he know what brands of furniture the plaintiffs sold. Furthermore, he never asked the plaintiffs what type of furniture they sold. In fact, when asked what he thought fine furniture was Inglese responded: "One that is rather expensive, that I would purchaser [sic] not on the outdoors, but in the indoors; one that I would pay a substantial amount of money for; one that is very unique; and frankly one that pleases my eyes and fits my pocketbook." Finally, the record reflects that the town's regulations do not define the term "fine furniture." In light of the foregoing, the court can not find any substantial evidence in the record to support the board's conclusion that the plaintiffs' did not sell "fine furniture."
Additionally, the board's statement that the terms "oriental rugs, fine furniture and art" should be read together in their entirety to indicate the level of quality of the furniture, is contradicted by the sentence immediately following that statement. The board's decision provides: "While fine furniture was not specifically described, the variance would be read in its entirety as having an inherent unity of decision. The applicant for that variance [Amatulli] presented his request as a unitary CT Page 12624 operation with the sale of furniture as an adjunct to the sale of oriental rugs. . . ." (Emphasis added.) It is difficult to see how the variance should be viewed as inherently unified, when the sale of furniture was only an adjunct, and not equal to, the sale of oriental rugs.
The board's conclusion that whatever furniture the plaintiffs' sold was not "fine furniture" as envisioned in the Amatulli variance, was arbitrary and unreasonable.
Finally, the board noted that Amatulli had not appealed from the board's decision to grant him a variance limited to the retail sale of "oriental rugs, fine furniture and art." Amatulli's failure to appeal the board's decision in his favor is irrelevant. Amatulli wanted to sell his oriental rugs at retail, and he applied for and received a variance that allowed him to do that. Therefore, he would have had no reason to appeal from such a decision.
In conclusion, the board did not define the term "fine furniture," when it granted Amatulli's variance application. In fact, the transcript from the hearing in which Amatulli requested the variance sheds little light on the board's interpretation of the term "fine furniture." The record reflects that the board was almost exclusively concerned with Amatulli's request for the limited retail sale of oriental rugs. The record also reflects that the board's inclusion of"fine furniture" and art as a permitted retail use appears to be an afterthought.
 Reason Five
The board states in its fifth reason that Inglese's decision "was also correct in light of the [board's] decision . . . on this same property, when full retail use was denied."[9] The board further states that the denial was motivated by the board's concerns that the increased use of this site would be unsafe.
The issue of the plaintiffs' application for a full retail use of the property is irrelevant, but since the board has included it as a reason for denial, it will be addressed. Furthermore, as previously stated, the board's reliance on the planning director's decision is not proper with respect to the board's standard of review.
The record reveals that on March 9, 1993, the plaintiff CT Page 12625 owners, applied for a full retail use variance with respect to the entire property. If the variance had been granted, the plaintiffs could have used the entire premises for the retail sale of anything, not just the limited items granted in the 1990 variance. Thus, as the property is zoned for wholesale use only, and not retail, the granting of the variance would have, in effect, rendered the zoning regulation a nullity. As such, the variance application was denied.
The denial of that application, however, has no effect on any use of the property that conforms with the preexisting limited retail use variance. The board cannot deny the plaintiffs' application for site plan approval because the plaintiffs applied for, but were denied, a full retail use variance. A variance application for the full retail use of property has no bearing on a subsequent variance application that seeks a partial retail use
of the property, because the property may be suitable for the latter, even though not the former, use. Logically, variance applications which seek different uses, should be evaluated according to their individual merits under the circumstances. A broad prohibition on a less intensive use of property, merely because the property is unfit for the more intensive use, is unjustified.
Additionally, as was discussed previously, the board is not permitted to base its decision on the actions of the planning director. Furthermore, the plaintiffs' application for a full retail use variance is entirely different from their application for site plan approval. The board's concerns that the safety of the residents of Ridgefield, although possibly valid with respect to the full retail use of the property, is not valid with respect to the plaintiffs' site plan application. The board's decision to grant the limited use variance in 1990 took into account its effect on public safety, most notably traffic concerns, and determined it to be acceptable. Therefore, the comparison of the two applications is inappropriate.
 Reason Six
The board, in its sixth reason for denial of the plaintiffs' appeal, reasoned that the plaintiffs' planned uses "are not permitted uses in [the B-2 zone]," and "that the uses proposed by the [plaintiffs] did not receive a variance." The board also engaged in an extensive discussion of preexisting non-conforming uses. Finally, the board stated that in light of all these CT Page 12626 considerations the planning director made the correct decision.
Despite the fact that the board's reliance on the planning director is misdirected, the reasons offered for the denial of the plaintiffs' appeal ignore the record.
The record demonstrates that the plaintiffs' planned uses were generally not permitted uses in a B-2 zone; but the existence of the limited retail use variance expressly allowed for such limited retail sales. Here, the plaintiffs wanted to sell specific items at retail, but the B-2 zone only permitted wholesale sales. The board, however, previously granted a variance for this particular piece of property that allowed for the limited retail sale of "oriental rugs, fine furniture and art."
Variances run with the land, and therefore, the plaintiffs were not required to apply for and receive their own variance to sell the limited items at retail, but rather the plaintiffs could use the property in any way that was consistent with the preexisting variance. See Reid v. Zoning Board of Appeals,235 Conn. 850, 859, 670 A.2d 1271 (1996) (variances run with the land and are not personal to an owner of the property). Thus, the board's conclusion that the plaintiffs' proposed retail use of the property would violate the B-2 zone, disregards the previously granted limited
Finally, any arguments that the plaintiffs may have raised concerning non-conforming uses in their appeal, need not be considered by the court. The plaintiffs' supplemental brief states "[t]he plaintiff does not contend that retail sale of furniture is either a permitted use in the zone or a nonconforming use." Therefore, the court treats the plaintiffs' non-conforming use claim as abandoned.
 Reason Seven
The board stated that the "[p]lanning [d]irector had to base his decision on [inadequate] information given to him during the site plan application process." The board further stated that "[i]t was noted that a large volume of exhibits was provided to the ZBA that was not made available to the [p]lanning [d]irector. Claim by [plaintiffs'] attorney that "no one asked us' was not considered appropriate." CT Page 12627
The board's statement that it was supplied with "a large volume of exhibits," although the planning director was not, clearly evinces a misunderstanding of the board's proper scope of review. The plaintiffs were entitled to a de novo hearing and review of the planning director's decision, not a review of Inglese's decision with the board's stamp of approval.
 Reason Eight
The board stated that the planning director was presented with a map that showed reduced parking space because of the plaintiffs' inclusion of display areas. The board maintained that the planning director's "consideration of [the map] was appropriate" in reaching his decision.
It was the board's responsibility, however, to review the site plan map, in addition to the entire site plan application, to determine if the application conformed to the existing zoning regulations. As stated previously, the record demonstrates that the plaintiffs' site plan application was for the identical approval that Amatulli received in 1990. The inclusion of the word "display" on the plaintiffs' site map was only applicable if the previous approval included outdoor displays
If the previous approval did not include such outdoor displays, then the plaintiffs were not requesting any. Therefore, the board's conclusion is unsupported by the record.
Accordingly, for the reasons set forth above, the court sustains the plaintiffs' appeal from the denial of their application for site plan approval for exactly the same uses approved in the July 23, 1990 approval.
STODOLINK, J.